IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK EDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-00948-K |
| | § | |
| CITY OF BURLESON, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant City of Burleson's (the "City") Second Motion to Dismiss (the "Motion to Dismiss"), Doc. No. 22, Plaintiff Mark Eder's Response in Opposition to Defendant's Second Motion to Dismiss Complaint, Doc. No. 27, and the City's Reply Brief Opposing Plaintiff's Response to Second Motion to Dismiss Complaint, Doc. No. 30.

Upon consideration of the parties' submissions, the Court **GRANTS** the City's Motion to Dismiss with prejudice in part, **GRANTS** it without prejudice in part, and **DENIES** it in part. Mark Eder was the City of Burleson's Director of Information Technology until a 2021 investigation into his conduct ended with his forced resignation. The City told him that he had to leave his job because, among other things, he made homophobic comments and mocked one or more Asian employees. Mr. Eder says the City actually forced him to resign because he is a cisgender man, he is Christian, and he opposed the City's use of federal funds to award a contract without

1

conducting the requisite solicitation of competing bids. He seeks monetary relief from the City for violations of federal and state anti-discrimination law and for retaliatory discharge under the federal False Claims Act. The Court **DISMISSES** Mr. Eder's sex discrimination claims with prejudice because Mr. Eder has not alleged any facts connecting his resignation to his sex and does not seriously defend the claims. The Court will not dismiss Mr. Eder's religious discrimination claims because the City allegedly forced him out in part because he made comments with religious content. The Court **DISMISSES** Mr. Eder's False Claims Act retaliation claim without prejudice because has not pled facts indicating that the City's alleged misuse of federal funds plausibly implicated any knowing falsehood or fraud within the scope of the False Claims Act.

I.  **BACKGROUND**

The Court draws the following facts from Mr. Eder's First Amended Complaint and assumes they are true. Doc. No. 16.

For over seventeen years, Mr. Eder enjoyed a successful career as the City of Burleson's Director of Information Technology ("IT"). *Id.* ¶ 7. He experienced a hiccup in 2019, when a subordinate complained to the City about a "dysfunctional work environment" and "demeaning treatment" in the IT department. *Id.* ¶¶ 34–36. After an investigation, an outside attorney concluded that Mr. Eder made an anti-lesbian remark in 2011. *Id.* ¶¶ 36–38. Mr. Eder defends the remark, saying he used an IT term for diagonal pliers that sounds like, but is not, an anti-lesbian slur. *Id.* ¶¶ 38–39.

2

He continued in his role with the City and received a raise and a strong performance review as late as the middle of September 2021.  *Id.* ¶ 10.

Toward the end of September, Mr. Eder learned that the City Manager had placed a nearly $160,000 contract on the City Council's consent agenda relying on funding from an account under Mr. Eder's supervision.  *Id.* ¶ 18.  Under the contract, a firm called Mission Critical Partners would consult with the City to help the City procure a public safety software suite.  *Id.* ¶ 19.  Mr. Eder realized that his department lacked the resources to the fund the contract and, based on his experience participating in discussions about budgeting and federal funds, inferred that the City would be using federal funds awarded under the American Rescue Plan Act ("ARPA") to pay Mission Critical Partners.  *Id.* ¶¶ 11–31.  He believed that this would violate some combination of federal regulations, state statutes, and the City's prior representations to the federal government because Mission Critical Partners had not competed with other bidders for the contract.  *Id.* ¶¶ 24–29.  After an unsuccessful attempt to contact the City Manager, Mr. Eder spoke to the City's Purchasing Manager and Deputy City Manager to ask "where the money was coming from" for the contract, to "question[] the procurement process," and to inquire "how an IT contract this large was being sent to [City] Council without either the required competitive bidding" or Mr. Eder's knowledge.  *Id.* ¶ 26.

Around the same time, Mr. Eder's Deputy Director of Information Technology, Charles Hight, began behaving insubordinately.  Mr. Hight allegedly directed drunken and profane language toward Mr. Eder in a pair of episodes.  *Id.* ¶¶ 54–59.  Aware that

3

he had "crossed the line," Mr. Hight texted Mr. Eder, "Do I need to hit before you do; because I really do not trust you anymore. You scare me." *Id.* ¶ 60. According to Mr. Eder, Mr. Hight promptly "hit first" and falsely accused Mr. Eder of making "anti-LGBTQ and [a]nti-Asian comments" in a complaint to the City's human resources department. *Id.* ¶ 61. The City suspended Mr. Eder from work with pay. *Id.* ¶ 84.

The City Manager asked the same attorney who conducted the 2019 investigation of the IT department to investigate the complaint. *Id.* ¶ 63. The investigation uncovered four allegedly improper statements made or approved by Mr. Eder. *Id.* ¶ 64. He denies making three of them: a joke about "how two lesbians would build a house," a statement that "all gay people go to hell," and a statement that "[h]omosexuality is an abomination." *Id.* Mr. Eder accuses Mr. Hight of fabricating the second and third statements in the mistaken belief that Mr. Eder might make them because he attends a Christian church. *Id.* ¶¶ 80–82, 137. The fourth allegedly improper statement was the question "did you know Scott was gay," asked by a coworker about another coworker named Scott. *Id.* Mr. Eder says he responded, "who cares?" *Id.*

The investigation also revealed allegations that Mr. Eder mocked an Asian employee's accent and "mocked bowing." *Id.* ¶ 65. Mr. Eder does not respond to these allegations but states that he admonished his colleagues to treat their Asian coworkers with the "utmost sensitivity." *Id.* ¶ 66. He broadly criticizes the investigating attorney for digging into old complaints, asking vague questions, and relying on the testimony

4

of Mr. Hight and his friends without seeking out exculpatory witnesses and evidence. *Id.* ¶¶ 68–97.

While the investigation of Mr. Eder was ongoing and he remained suspended from work, the City awarded the Mission Critical Partners contract without competitive bidding. *Id.* ¶¶ 30, 114. Eleven days later, the City told Mr. Eder that they would terminate him if he did not resign. *Id.* ¶¶ 87–88, 114. In explanation, the City pointed to his allegedly homophobic remarks, his alleged mockery of at least one Asian employee, his alleged denial that he engaged in this conduct, and the 2019 investigation finding that he made an anti-lesbian comment. *Id.* ¶ 87.

Mr. Eder subsequently filed a Complaint against the City in this Court and asserted claims of (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Chapter 21 of the Texas Labor Code, (2) religious discrimination in violation of the same statutes, and (3) retaliatory discharge in violation of the False Claims Act ("FCA"). Doc. No. 1 ¶¶ 64–72. The City moved to dismiss these claims, Doc. No. 8, Mr. Eder amended his Complaint with additional detail, Doc. No. 16, and the City moved again for dismissal. Doc. No. 22.

## II. LEGAL STANDARD

The Court will dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if Mr. Eder fails to plead facts sufficient to make the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the plausibility of a claim, the Court assumes that Mr. Eder's factual allegations are true but does not assume that his

legal conclusions are true. *Id.* at 678–79. The Court rejects the City's request to analyze Mr. Eder's FCA retaliation claim under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The crux of the claim is proof of retaliatory discharge, not proof that fraud actually occurred. *Jamison v. Fluor Fed. Sols., LLC*, 2017 WL 3215289, at *4 & n.6 (N.D. Tex. July 28, 2017) (Boyle, J.).

The parties treat Mr. Eder's claims of sex and religious discrimination under state law as factually and legally indistinguishable from his claims of sex and religious discrimination under federal law, so the Court will assume that the state law claims rise or fall with the corresponding federal law claims. Doc. No. 22 at 11; *see generally* Doc. No. 27; *see also Herrera v. NBS, Inc.*, 759 F. Supp. 2d 858, 865 (W.D. Tex. 2010).

### III. DISCUSSION

The Court dismisses Mr. Eder's sex discrimination claims with prejudice, declines to dismiss his religious discrimination claims, and dismisses his FCA claim without prejudice. The Court reviews each set of claims in turn.

#### A. Sex Discrimination

Virtually no factual allegations support Mr. Eder's claim that the City forced him to resign because he is a cisgender man. The theory of the claim is that a woman or a transgender man (Mr. Eder says gay man, which appears to be a mistake, but not one material to the present discussion) could have made the same allegedly homophobic statements falsely attributed to Mr. Eder without losing her or his job. Doc. No. 27

at 20. If there were a factual basis to infer that the City was more severe toward Mr. Eder than toward similarly situated coworkers who are not cisgender men, that would be a step toward stating a sex discrimination claim. *See Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021). It is unclear what that basis might be. Mr. Eder does not cite any of the allegations in his First Amended Complaint in support of his theory. *See* Doc. No. 27 at 20. He does not allege that the City showed leniency to other employees accused of making homophobic statements, whether or not they also stood accused of mocking coworkers for their race. He identifies no policies or direct statements by City personnel endorsing that result. Any divergence between the consequences Mr. Eder faced as a cisgender man because of his allegedly homophobic statements and the consequences faced by individuals who are not cisgendered men appear to be hypothetical and speculative. Without a stronger factual underpinning, Mr. Eder's claims cannot proceed. *See Gaumond v. City of Dallas*, 2023 WL 2061170, at *4 (N.D. Tex. Feb. 15, 2023) (Brown, J.).

The Court will dismiss these claims with prejudice. The City previously moved to dismiss the claims on the grounds that they were vague and conclusory, and Mr. Eder's subsequent amendment of the claims has not fixed the problem. Doc. No. 8 at 11–12; *see Williams v. Health Tex. Provider Network*, 2017 WL 2608813, at *5 (N.D. Tex. June 1, 2017) (Toliver, M.J.), *rep. & rec. adopted*, 2017 WL 2616952 (N.D. Tex. June 15, 2017) (Lynn, C.J.). In his briefing, Mr. Eder does not seriously challenge the City's criticisms. The only affirmative argument he makes in support of the claims is

the summary assertion that a person other than a cisgender man "would not have been terminated for the allegedly stated anti-LGBTQ statements" at issue. Doc. No. 27 at 20. He does not ask for leave to further amend the claims or suggest any facts he might plead to salvage them. *See Wilson v. Republic Nat'l Indus. of Tex., LP*, 2019 WL 3859666, at *6 (N.D. Tex. Aug. 16, 2019) (Boyle, J.). The Court concludes that Mr. Eder has pled his best case and does not have a viable claim for sex discrimination.

### B. Religious Discrimination

The Court will not dismiss Mr. Eder's religious discrimination claims. He alleges that the City forced him to resign based on statements of religious belief it believed he made, and the City has not meaningfully disputed the sufficiency of his allegations.

Mr. Eder contends that the City discriminated against him based on his Christian beliefs because it referenced his alleged statements that "all gay people go to hell" and that "[h]omosexuality is an abomination" among the facts supporting its request for his resignation. Doc. No. 27 at 16–18; Doc. No. 16 ¶ 64. Although Mr. Eder attends a church that "welcome[s] all people without regard to their sexual orientation," he believes that these statements reflect a "traditional biblically-based Christian position" on a topic that divides Christians. Doc. No. 27 at 16–17; Doc. No. 16 ¶ 137. He concludes that the City compelled him to resign because it mistakenly believed him to be a "traditional" Christian. Doc. No. 27 at 17.

The City's dismissive response is that Mr. Eder's argument shows "nothing more than his biblical scholarship" and improperly relies on scriptural quotations outside his

8

First Amended Complaint. Doc. No. 30 at 2. Mr. Eder's quotations do not concern the Court because he separately pleads that his alleged statement that "[h]omosexuality is an abomination" is the "actual theological position of several of the largest Christian churches in America" and "an exact quote of the Hebrew scriptures." Doc. 16 ¶ 138. His argument does not turn on showing that more than one of his alleged statements has biblical antecedents.

The Court also does not agree that the religious content of Mr. Eder's alleged statements is legally irrelevant. Since the City has not argued otherwise, the Court assumes that Mr. Eder's personal disagreement with the religious beliefs allegedly attributed to him does not foreclose his claim. *Cf. Kallabat v. Mich. Bell Tel. Co.*, 2015 WL 5358093, at *3 (E.D. Mich. June 18, 2015) (collecting cases from courts of five circuits rejecting such claims but declining to follow them). On that assumption, the City's decision to make Mr. Eder resign based on his alleged statements would support his religious discrimination claims so long as the motivation for the decision came from inferences about Mr. Eder's religious beliefs derived from the statements. *See Carter v. Transp. Workers Union*, 602 F. Supp. 3d 956, 965 (N.D. Tex. 2022) (Starr, J.) (statements mixing criticism with religious opposition to abortion). Although the City argues that Mr. Hight lacked this motivation when he instigated the investigation of Mr. Eder, it does not otherwise contest Mr. Eder's inference that the City itself had a discriminatory motive when it reviewed Mr. Eder's alleged statements and relied on them in asking him to resign. Doc. No. 22 at 12–15; Doc. No. 30 at 2–3.

The Court expresses no opinion on whether the City had non-discriminatory reasons for requesting Mr. Eder's resignation based in part on his alleged statements. The Court can address the issue on an evidentiary record if the City chooses to raise it. *Compare Lloyd v. Birkman*, 127 F. Supp. 3d 725, 757 (W.D. Tex. 2015) (denying summary judgment on rejected job candidate's claim because he offered opinions about same-sex marriage and abortion and interviewers specifically inquired about his religious affiliation), *with Flanagan v. City of Richmond*, 2015 WL 5964881, at *19 (N.D. Cal. Oct. 13, 2015) (affirming summary judgment on terminated city employee's claim after investigation she called a sham because her comments, like "she won't be going to heaven . . . because God does not like gays," violated non-religious workplace expectations), *aff'd*, 692 F. App'x 490 (9th Cir. 2017) (per curiam).

## C. False Claims Act Retaliation

The Court dismisses Mr. Eder's FCA retaliation claim because he has not alleged that he engaged in any activity protected by the FCA. Mr. Eder alleges that the City forced him to resign because he opposed its decision to use ARPA funds to award a consulting contract to Mission Critical Partners without competitive bidding. Doc. No. 16 ¶¶ 25–32, 158. Assuming that using funds without competitive bidding violated federal procurement regulations, Mr. Eder still has not alleged that the FCA protects him because he has not pled that his opposition to the award concerned any fraud or falsehood reasonably within the scope of the FCA.

The FCA prohibits knowingly presenting false or fraudulent claims for payment to the federal government or defrauding the government in other specified ways. 31 U.S.C. § 3729(a). An employer may not discharge an employee for engaging in lawful conduct in furtherance of an action to enforce the FCA or making efforts to stop a violation of the FCA, both of which are "protected activity." *Id.* § 3730(h). Protection extends to complaints an employee makes to fellow employees, but only if the complaints concern false or fraudulent conduct that might be actionable under the FCA. *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 372 (5th Cir. 2011) (per curiam). As long as the conduct might be actionable, the employee need not prove that the employer actually committed fraud. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 n.1 (2005).

Mr. Eder's allegations of protected activity fail under these standards. He contends that he contacted the City's Purchasing Manager and Deputy City Attorney before the City awarded the Mission Critical Partners contract to oppose the award and ask why the City did not plan to solicit required competitive bids. *Id.* ¶¶ 24–32. Even if his communications alerted the City that a violation of competitive bidding regulations was afoot—a point the parties hotly dispute—nothing in the communications or in the factual context described in Mr. Eder's pleading fairly suggests that the violation implicated the FCA. Transgressing regulations is not fraud, nor is it a knowing submission of a false claim for payment. *United States ex rel. Wright v. Comstock Res., Inc.*, 456 F. App'x 347, 353 (5th Cir. 2011) (per curiam). Mr. Eder says the City promised it

11

would comply with bidding regulations before it received ARPA funds, but that makes no difference. Doc. No. 27 at 23. He has not alleged that the City was lying about its intent to comply when it made the promise. *United States ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*, 806 F.3d 946, 951 (7th Cir. 2015); *cf. also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752 (2023) ("Both the text [of the FCA] and the common law also point to what the defendant thought when submitting the false claim—not what the defendant may have thought after submitting it."). In his telling, the City simply decided that it was not worth sticking to its promise when the Mission Critical Partners contract came up for consideration. Doc. No. 16 ¶¶ 11–32.

This distinguishes Mr. Eder's allegations from the facts of *United States ex rel. Hendow v. University of Phoenix*, on which he relies. 461 F.3d 1166 (9th Cir. 2006). There, the relators who reported misuse of federal funds also alleged that the defendant falsely certified compliance with the relevant federal restrictions to obtain additional funds. *Id.* at 1169–70; *cf. United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) (Easterbrook, J.) (explaining this distinction in a similar case). While Mr. Eder's alleged attempt to report the City's regulatory violations is praiseworthy, it does not implicate any fraud or falsehood reasonably related to the FCA, and the FCA does not protect it. *See United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 60 (1st Cir. 2017); *accord Fox Valley*, 806 F.3d at 953; *Hoyte v. Am. Nat. Red Cross*, 518 F.3d 61, 66–67 (D.C. Cir. 2008); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996); *McCrary v. Knox Cnty.*, 200 F. Supp. 3d 782, 793–94 (S.D. Ind.

2016); *Simoneaux v. E.I. du Pont de Nemours & Co.*, 2018 WL 4494979, at *3 (M.D. La. Sept. 19, 2018).

The Court will give Mr. Eder one more opportunity to amend his FCA retaliation claim and plead his best case. Because the Court does so, it makes an observation before concluding. The parties argue at some length about whether the City violated any procurement regulation regardless of whether the violation would create FCA liability. Doc. No. 22 at 19–23; Doc. No. 27 at 25–28. They both assume that 45 C.F.R. § 92.36 establishes federal regulations governing the City's use of ARPA funds and incorporates state federal regulations on the same topic. *See* Doc. No. 22 at 20; Doc. No. 27 at 25. This is puzzling because the Court is unable to locate 45 C.F.R. § 92.36, and Subtitle A of Title 45 of the Code of Federal Regulations, where it might have been found, contains the regulations of the Department of Health and Human Services. The parties may wish to revisit the regulations they believe are material to this case.

## IV. CONCLUSION

The Court **GRANTS** the City's Motion to Dismiss with prejudice in part, **GRANTS** it without prejudice in part, and **DENIES** it in part. The Court **DISMISSES** Mr. Eder's sex discrimination claims with prejudice and **DISMISSES** Mr. Eder's FCA retaliation claim without prejudice. If Mr. Eder has a good faith basis to do so, he **MAY FILE** an amended pleading no later than fourteen days after the entry of this order. Mr. Eder shall confine any amendments to his dismissed claim for retaliation under the FCA and shall omit any claims for sex discrimination. If Mr. Eder files

an amended pleading, he must attach a redline to the pleading showing the differences between the amended pleading and his First Amended Complaint.  Doc. No. 16.

**SO ORDERED.**

Signed February 27th, 2024.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE