IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK EDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-00948-K |
| | § | |
| CITY OF BURLESON, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant City of Burleson's (the "City") Third Motion to Dismiss (the "Motion to Dismiss"), Doc. No. 44, Plaintiff Mark Eder's Response in Opposition to Defendant's Third Motion to Dismiss, Doc. No. 53, and the City's Reply Brief Opposing Plaintiff's Response to Third Motion to Dismiss, Doc. No. 55. Because the Court finds Mr. Eder fails to state a claim for which he is entitled to relief under the retaliation provisions of the False Claims Act ("FCA"), the Court **GRANTS** the City's Third Motion to Dismiss, and **DISMISSES** Mr. Eder's FCA retaliation claim with prejudice.

I.   BACKGROUND

Mr. Eder brought an action against the City, his former employer, for unlawfully terminating him on the basis of religious and sex discrimination alleged under Title VII of the Civil Rights Act of 1964, and unlawfully retaliating against him for activity he alleges was protected under the False Claims Act. Doc. No. 1, 1 at ¶1 (page numbers

refer to ECF stamps). The Court granted in part, and denied in part, the City's Second Motion to Dismiss, dismissing Mr. Eder's sex and retaliation claims but preserving his claim of religious discrimination. Doc. No. 26. A more detailed background of the case can be found in the Court's previous Memorandum Opinion and Order. *Id*. at 2-5. In dismissing Mr. Eder's retaliation claim, the Court granted Mr. Eder leave to amend to plead his best case, if he had a good faith basis to do so. *Id*. at 12. Mr. Eder amended pursuant to the Court's leave and filed his Second Amended Complaint. Doc. No. 37. The City filed its Third Motion to Dismiss, solely to challenge Mr. Eder's retaliation claim. Doc. No. 44. The motion has been briefed and is now ripe to decide.

## II.    STANDARD OF REVIEW

The Court will dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails to plead facts sufficient to make the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a plaintiff's claim for relief is plausible "is a context-specific task" for which "the reviewing court must draw on its judicial experience and common sense." *Id.* at 679. In assessing the plausibility of a claim, the Court accepts "well-pleaded factual allegations" as true and examines them "to determine whether these well-plead factual allegations "plausibly give rise to an entitlement to relief." *Id*. However, allegations which are "no more than conclusions," are not entitled to the assumption of truth. *Id*. Nor are legal conclusions accepted as true. *Id*. Accordingly, in its analysis below, the Court first carefully examines Mr. Eder's Second Amended Complaint to identify its well-pleaded factual

allegations, and then determine if these well-pleaded factual allegations state a claim which entitles Mr. Eder to relief under the FCA. The Court finds that they do not.

## III. FALSE CLAIMS ACT

Plaintiff asserts entitlement to relief under the whistleblower provisions of the FCA specifically, 31 U.S.C. § 3730(h)(1). Doc. No. 37, pp. 5-16, 30-31, 33-46. To sufficiently plead a prima-facie claim for retaliation, Plaintiff must plausibly plead (1) he engaged in protected activity under the FCA; (2) his employer knew he was engaged in protected activity; and (3) he was discharged because he engaged in protected activity. *See Thomas v. ITT Educ. Serv., Inc.*, 517 Fed Appx. 259, 262 (5th Cir. 2013).

The FCA prohibits knowingly presenting false or fraudulent claims for payment to the federal government or defrauding the government in other specified ways. 31 U.S.C. § 3729(a). The Supreme Court has long held the FCA is "largely a fraud statute" that was "enacted to stop the massive frauds perpetuated by large contractors during the civil war." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023) (citing *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187-188, and n.2 (2016)). Further, the cause of action under the FCA is narrow one, relating only to false claims, as defined by the statute. *See Universal Health Services, Inc. v. U.S.*, 579 U.S. 176, 194 (2016)("the False Claims Act is not "an all- purpose anti-fraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)). As such a finding of liability under the FCA requires similar findings to

3

that of common-law fraud, for "the FCA refers to false or *fraudulent* claims." *Schutte*, 598 U.S. at 739 (emphasis in original).

Violating a regulation is not fraud, nor is it a knowing submission of a false claim for payment. *United States ex rel. Wright v. Comstock Res., Inc.*, 456 F. App'x 347, 353 (5th Cir. 2011) (per curiam). However, a defendant may be liable under the FCA for a so-called reverse-false claim related to a regulatory violation, if by making a false or fraudulent statement, they "knowingly and improperly" avoid "an established duty to pay or transmit money or property to the Government." *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1039 (5th Cir. 2016) (quoting 31 U.S.C. § 3729(a)(1)(G)). That said, false statements made to avoid future contingent obligations, such as potential future regulatory penalties, do not implicate the FCA, since such statements would not relate to an "established duty to pay." *Id.* at 1039-1040 ("[m]ost regulatory statutes… impose only a duty to obey the law, and the duty to *pay* regulatory penalties is not established until the penalties are assessed.")(emphasis in original).

An employer may not discharge an employee for engaging in lawful conduct in furtherance of an action to enforce the FCA or for pursuing other efforts to stop a violation of the FCA, both of which are "protected activity." 31 U.S.C. § 3730(h). If the employer's conduct might be actionable under the FCA, the employee need not ultimately prove that the employer committed fraud, for their conduct to prevent a FCA violation or pursue a FCA claim be protected from retaliation. *See Graham Cnty.*

4

*Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 n.1 (2005). Consistent with the statute's anti-fraud purpose, a protected activity must be motivated by an employee's concern regarding its employer's potential fraud. *Thomas*, 517 F. App'x at 262 ("A protected activity is one motivated by a concern regarding fraud against the government."). Protection extends to complaints an employee makes to fellow employees, but only if the complaints concern false or fraudulent conduct that might be actionable under the FCA. *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 372 (5th Cir. 2011) (per curiam).

While a plaintiff need not prove the defendant committed fraud to be protected from retaliation under the FCA, the activity must be "aimed at matters that could reasonably lead to a viable claim under the Act." *United States ex rel. O'Neill v. Gopalam*, No. CV 18-567-JWD-RLB, 2023 WL 6396659, at *31 (M.D. La. Sept. 29, 2023) (quoting *United States ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 604–05 (S.D. Tex. 2012)). In particular, "the protected actions must relate to 'matters demonstrating a "distinct possibility" of False Claims Act litigation." *Id*. (quoting *George*, 864 F. Supp. 2d at 605). To show the "distinct possibility" of FCA litigation that is necessary for an employee's activity to be protected under the FCA, an employee must show a "good faith belie[f]" and that "a reasonable employee in same or similar circumstances might believe that the employer is committing fraud against the government." *Id*.

Therefore, for Mr. Eder to state a claim for relief against the City under the retaliation provisions of the False Claims Act at 31 U.S.C. § 3730(h), Mr. Eder's

Second Amended Complaint must contain well-pleaded factual allegations that, when taken as true, establish that: (1) he engaged in protected activity (which is (a) lawful conduct undertaken to pursue a false claims action or other efforts to stop a false violation of the FCA, where there is a "distinct possibility" of FCA litigation because (b) he in good faith believed and (c) another employee in a similar situation might reasonably have believed that the City was committing fraud against the government); (2) the City knew he was engaged in the protected activity; and (3) the City terminated him because of the protected activity. *See Thomas*, 517 Fed Appx. at 262; *George*, 864 F. Supp. 2d at 605.

As stated in the Court's previous Memorandum Opinion and Order, the Court rejects the City's request to analyze Mr. Eder's FCA retaliation claim under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Doc. No. 26. at 6. As the Court previously found, "the crux of a retaliation claim is proof of retaliatory discharge, not proof that fraud actually occurred, so it is Federal Rule of Civil Procedure 8(a) that applies." *Id*. (citing *Jamison v. Fluor Fed. Sols., LLC*, 2017 WL 3215289, at *4 & n.6 (N.D. Tex. July 28, 2017) (Boyle, J.)).

## IV. ANALYSIS

### A. Identifying Mr. Eder's well-pleaded factual allegations relating to his retaliation claim under the FCA.

After carefully reviewing Mr. Eder's lengthy Second Amended Complaint, the Court finds Mr. Eder's complaint contains the following well-plead factual allegations

6

relating to Mr. Eder's claim for relief under the retaliation provisions of the FCA, which, solely for the purposes of this Motion, the Court accepts as true:

1. The City received federal funds from an ARPA grant. Doc. No. 37, at 11, ¶24.

2. Mr. Eder opposed a contract he believed would use ARPA funds being on the City Council's agenda, since he thought it would violate state law. *Id*. at 14, ¶32.

3. Mr. Eder feared the contract would be a misuse of federal funds. *Id*. at 14, ¶33.

4. Mr. Eder sought to meet with the City Manager to talk about the contract but did not because the City Manager was out of town. *Id*. at 14, ¶29.

5. Mr. Eder questioned the Purchasing Manager and Deputy City Attorney about the contract's procurement, funding, and its approvals. *Id*. at 14, ¶¶30-31, 33.

6. In days following, the City received a complaint from Mr. Eder's deputy, filed after being disciplined, and the City investigated the complaint. *Id*. at 14, ¶37.

7. The City's investigator concluded that Mr. Eder had violated employee policies, and the City asked Mr. Eder to resign or be terminated. *Id.* at 30-31; ¶¶90-93.

8. Mr. Eder alleges his termination was due to his deputy's retaliatory complaint, and the unlawful religious discrimination he alleges to have suffered during the City's investigation which led to Mr. Eder's termination. *Id*. at 16-30, ¶¶ 38-87.

After careful review of Mr. Eder's Second Amended Complaint, the Court disregards all other allegations relating to his retaliation claim for they are not well-pleaded factual allegations, and thus cannot be accepted as true for the purpose of evaluating this Motion to Dismiss.

### B. Mr. Eder's well-pleaded allegations, accepted as true, do not state a claim that entitles him to relief under the retaliation provisions of the FCA.

The Court reviews Mr. Eder's well-pleaded factual allegations above, to determine whether his complaint has stated a claim that entitles Mr. Eder to relief under the retaliation provisions under the FCA. The Court determines Mr. Eder's complaint fails to state a claim, and therefore, the Court must grant this Motion to Dismiss.

For Mr. Eder's FCA retaliation claim to survive this Motion to Dismiss, Mr. Eder's Second Amended Complaint must contain well-pleaded factual allegations that he (1) engaged in protected activity, which means Mr. Eder believed in good faith that the City could be committing fraud against the government, that Mr. Eder's belief the City could be committing fraud was objectively reasonable (e.g., other employees might reasonably believe this as well) and that Mr. Eder then engaged in lawful conduct to pursue a false claims action or engage in other efforts to stop this potential fraud. After pleading factual allegations to show Mr. Eder engaged in this protected activity, then Mr. Eder's complaint must plead factual allegations that (2) the City was aware of Mr. Eder's protected activity, and (3) the City terminated Mr. Eder due to his protected activity. Mr. Eder's complaint does not plausibly plead with well-plead factual allegations any of these required prima-facie elements of his retaliation claim, and accordingly, the Court must grant the City's Motion to Dismiss.

1. **Mr. Eder's well pleaded factual allegations do not show a good faith and objectively reasonable belief the City was committing fraud against the government.**

8

Though the Court accepts as true Mr. Eder's pleadings that he understood the contract could violate state law, and might be a misuse of federal funds, Mr. Eder does not plead any factual allegations which show he in good faith believed that City was committing fraud against the government. This failure to offer well pleaded factual allegations that Mr. Eder believed the City was committing fraud against the government is fatal to his claim under the retaliation provisions of the FCA. *George*, 864 F. Supp. 2d at 605. This deficiency in Mr. Eder's prior complaint was specifically identified by the Court's Memorandum Opinion and Order and was not sufficiently, nor directly, addressed by Mr. Eder's Second Amended Complaint. Doc. No. 26 at 10-13. However, beyond Mr. Eder's failure to sufficiently amend his prior complaint, Mr. Eder fails to plausibly plead he had a good faith, and objectively reasonable basis to believe the City was committing fraud against the government, for three reasons.

First, although Mr. Eder alleges that the City's acts were unlawful, he does not allege that he had a good faith belief the city was committing fraud under the common law, or within the meaning of the FCA. Mr. Eder's Second Amended Complaint alleges the "$159,247 no-bid contract violated federal procurement law," and the City "unlawfully used federal ARPA funds in violation of ARPA requirements and/or the express representations it made to the federal government in applying for and accepting such funds that it would follow state and federal procurement law in using ARPA funds." Doc. No. 37 at 15-16, ¶35.  This allegation is insufficient for Mr. Eder to plead he had a good faith basis to believe the City was committing fraud against the government.

9

Among the elements of both common-law fraud and claims under the FCA is scienter, which links the defendant's "lack" of an "honest belief in the statement's truth" at the time the statement is made, or relied upon, to the defendant's effort to obtain value. *See United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 752 (2023). Mr. Eder's complaint does not plead any factual allegations to show the City had a fraudulent scienter, that is, the City lacked an honest belief at the time the statement was made, and offered to obtain value. Mr. Eder would have to have alleged the City knew its statements were false, but made or offered them anyway, to obtain value, to plausibly plead a good faith belief the City was committing fraud against the government.

      Second, although Mr. Eder alleges that a party taking federal funding is required to comply with federal regulations, file various post-funding reports, and could face various potential penalties for non-compliance, including mandatory repayment, these conclusory statements do not show that Mr. Eder had a good faith basis to believe the City was committing fraud. Doc. No. 37 at pp. 8, 11-13, ¶¶12, 26-27. The complaint's conclusory statements that the City might, in the future, file false reports with the government, do not allege Mr. Eder in good faith basis believed the City was committing fraud against the government, for three reasons. First, this allegation is speculative, since, on its face, the allegation claims the City might filing false reports at some point in the future. Second, such future false reports would not be fraud, within the meaning of the FCA. Critically the assertion by Mr. Eder that the City was required to return all funds spent in violation of ARPA rules, regulations and laws, *is simply not found within*

10

*the authority Mr. Eder cites*. *See* Doc. No. 37 at 13, ¶27(f); cf. 2 C.F.R. § 200.344(d)(2020). Considering relevant provisions of 2 C.F.R. § 200.339(2020) additional conditions and remedies "may" be imposed when the Federal awarding entity determines there grant recipient is not compliant with law, regulations, or terms or conditions of the award, there is no "established duty to pay" to implicate the FCA under Mr. Eder's alleged reverse false claims theory, and thus there is no basis for protected activity under the FCA. *See Simoneaux*, 843 F.3d at 1039.

Third, even if Mr. Eder had plausibly plead that he had a good faith belief the City's no-bid approval of the contract in question represented the City committing fraud against the federal government, Mr. Eder's belief would not have been objectively reasonable, for the regulations which Mr. Eder cites did not require the City to use a formal purchasing process, as he incorrectly asserts. Doc. No. 37 at 12-13, ¶27. After a careful review of the regulations which Mr. Eder alleges the City violated by approving a no bid contract, the Court finds Mr. Eder's complaint does not fully state these regulations, nor does it accurately state how they apply to the contract in question. Most importantly, the Court finds the regulations did not necessarily require the City to engage in a formal purchasing process, contrary to Mr. Eder's claims. This means that whatever Mr. Eder's actual belief was about the propriety of the City's approval of the contract, it would not be reasonable for another employee to conclude the City unlawfully approved the contract, let alone to conclude that the City's approval of the contract would raise an objectively reasonable concern the City was engaging in fraud.

11

Specifically, the Court notes that the regulations cited by Mr. Eder in fact allow for non-competitive purchasing if one of five exceptions apply. 2 C.F.R. § 200.320(c)(2020). In his pleading, Mr. Eder acknowledges this, but he does not offer any well-pleaded factual allegations as to why none of the possible exceptions which permit non-competitive purchasing would apply. Doc. No. 37 at 12-13, ¶27(c).

In addition, the regulations show that "formal purchasing methods are not required" for purchases that are less than the "simplified acquisition threshold." 2 C.F.R. § 200.1(2021). The simplified acquisition threshold is set at $250,000. 48 C.F.R. § 2.101(2021). However, Mr. Eder's complaint incorrectly alleges "upon information and belief" that the simplified acquisition threshold is $10,000. Doc. No. 37 at 12, ¶27(b). Mr. Eder's apparent misreading of the threshold for formal purchasing is central to his claim under the FCA, and it appears this concern may have arisen from simply misreading the rules, rather than any reasonable dispute under the law.

Finally, for "small purchases" that are less than $250,000, but which exceed the "micro-purchase threshold" of $10,000 (set at 48 C.F.R. § 2.101), such as the contract in question, the regulations allow informal purchasing methods and allow the contracting party to determine the appropriate number of price or rate quotations to be obtained. 2 C.F.R. § 200.320(a)(2)(2020). This offers substantial flexibility for "small purchases," and though this regulation governs the City's procurement of the contract in question, Mr. Eder's complaint did not cite to this provision, nor plead factual allegations necessary to apply it to the contract in question.

12

Therefore, regardless of what Mr. Eder may have believed about the propriety of the City's approval process for this contract, the Court finds that Mr. Eder's conclusion that the City's approval of the contract was unlawful, is not supported by the regulations he cites, perhaps due to a simple oversight or mistake. Accordingly, even if Mr. Eder believed in good faith the City's actions were fraudulent on the basis of failing to formally bid the contract, such a belief could not have been objectively reasonable, for no other employee could have reasonably believed the City was committing fraud based on the basis that the City did not use a formal procurement process for the contract, when such a formal procurement process was not actually required.

For these reasons, the Court finds Mr. Eder has failed to plead factual allegations that he in good faith believed, and another employee also might reasonably have believed, that the City was committing fraud, and thus whatever his activity, it was not protected under the FCA. Accordingly, Mr. Eder has not stated a claim that entitles him to relief, and for this reason, the Court must grant the City's Motion to Dismiss.

2. **Mr. Eder's complaint does not plead that he engaged in lawful conduct to pursue a claim or stop a violation of the FCA which may be protected.**

In addition to the pleading deficiencies the Court identified above, the Court further finds Mr. Eder's complaint does not contain well pleaded factual allegations that he engaged in any conduct to pursue a false claims action or engage in other efforts to stop the violation. After rejecting Mr. Eder's legal conclusions, "bare assertions," and "bald allegations" that the Court must disregard when evaluating a Motion to Dismiss, the complaint contains no well-pleaded allegations that Mr. Eder engaged in any

13

activity to pursue a false claims action or to engage in any other efforts to stop a false claims act violation. *Iqbal*, 556 U.S. at 681. Though Mr. Eder claims he "actively opposed" the contract, besides attempting, but failing, to schedule a meeting to "talk with the City Manager," he does not offer well any pleaded factual allegations to indicate how he opposed the contract. Doc. No. 37 at 14, ¶29. At most, Mr. Eder's opposition consisted of speaking with the Purchasing Manager and Deputy City Attorney to ask several questions about the City's plan to procure, approve, and fund the contract. *Id*. at 14, ¶¶30, 33. If Mr. Eder took any other steps, he has not plead them.

Though an employee's asking questions can sometimes be sufficient activity to be protected, the employee's questions themselves must act to inform the company of the "distinct possibility" the employee may be pursuing a false claim, or acting to stop a violation of the FCA. *See George,* 864 F. Supp. 2d at 607 (the Court found an employees' questions were protected activity when the employee asked at a large meeting if specific company conduct was illegal, following a company presentation relating to federal fraud enforcement). Here, the context relating to his questions shows that Mr. Eder's questions were not likely to inform the company of the "distinct possibility" he was pursuing a false claim, or seeking to stop a violation of the FCA. *Id*. Rather, Mr. Eder asking co-workers about plans to procure, approve and fund an IT project was consistent with his seventeen years of experience working as the City's Director of IT, during which time he managed the IT department, including its project and budget, and became "intimately aware of the City's budget" over time as well. Doc. No. 37 at

14

8,11,15, ¶¶11,22-23,35. As such, Mr. Eder's asking other managers questions about the City's plans to procure, approve and fund an IT project would not plausibly indicate to these co-workers, or the City, that Mr. Eder was acting to further a FCA claim, stop a FCA violation, or had any concerns about fraud against the government.

Further, unlike allegations seen in more typical retaliation cases, Mr. Eder's complaint does not plausibly plead that he undertook any specific steps to report his concerns, whether to pursue a FCA or to stop a violation. For example, the Court observes Mr. Eder does not allege that he has ever reported his concerns to any internal decision makers, compliance officers, or external authorities to address or investigate his concerns. Nor does he indicate he communicated his concerns, whatever they were to the City, when he was suspended, during the City's investigation, or at the time he was terminated. Besides asking two fellow managers several questions about the contract, which were innocuous in context, Mr. Eder fails to plausibly plead that he undertook any activity to pursue a FCA claim or stop a FCA violation that would be protected.

Given this, Mr. Eder fails to state a claim for relief under the FCA's retaliation provisions, for he has not plausibly pled he undertook any activity protected under the FCA, and for this reason, the Court must grant the City's Motion to Dismiss.

3. **Mr. Eder does not plausibly plead the City was aware of his protected activity.**

In addition to Mr. Eder's Second Amended Complaint's failure to plausibly allege that Mr. Eder engaged in a protected activity for the two reasons above, the complaint does not contain well-pleaded factual allegations that the City was aware of Mr.

15

Eder's alleged protected activity. Whether or not Mr. Eder's alleged opposition was protected activity, Mr. Eder does not plausibly plead the City was aware of it.

As a starting point, the Court notes the particularity with which Mr. Eder's Second Amended Complaint pleads many factual allegations within his lengthy complaint, especially as it relates to his employee record and his allegations of religious discrimination. *See* Doc. No. 37 at 16-30, ¶¶ 38-87. However, after disregarding legal conclusions and threadbare assertions relating to Mr. Eder's much more thinly plead FCA retaliation claim, Mr. Eder's Second Amended Complaint does not contain any well-pleaded allegations that the City was aware he was engaged in protected activity.

Similar to the analysis above, after careful review of his Second Amended Complaint, the Court finds Mr. Eder fails to plead he took any specific actions that would have informed the City he was engaged in protected activity. At most, Mr. Eder alleges that his questions "would have identified to the persons he spoke with that he feared the misuse of federal funds." Doc. No. 37 at 14, ¶33. Mr. Eder's conclusory statement is both vague, and speculative, as such, it is just the sort of "bare assertion" or "bald allegations" the Court is to disregard upon a motion to dismiss. *Iqbal*, 556 U.S. at 681.

Further, the Court disagrees with the complaint's intended inference, for as previously discussed, given Mr. Eder's role as Director of IT, the questions he alleges he asked his co-workers were very closely related to his job duties managing the IT department and planning its budget. In the Court's view, such questions, without some further activity by Mr. Eder to put the City on notice that there was a "distinct possibility"

16

of FCA litigation, could not have informed the City that Mr. Eder was engaging in activity protected under the FCA. Therefore, even if Mr. Eder was engaged in a protected activity, he has not plausibly plead that the City was aware of it.

Absent any other well-pleaded factual allegation that the City knew of his alleged protected activity, after disregarding the bare assertion noted above, Mr. Eder's complaint does not plausibly plead the City knew of his protected activity, and Mr. Eder's Second Amended Complaint fails to state a claim for relief. Accordingly, the Court must grant the City's Motion to Dismiss Mr. Eder's FCA retaliation claim.

**4.    Mr. Eder does not plausibly plead his termination was due to protected activity.**

Finally, though it is true that Mr. Eder cannot plausibly plead he was terminated due to his protected activity since he failed to plausibly plead he engaged in protected activity and also failed to plausibly plead the City was aware of his protected activity, the Court also finds that Mr. Eder's complaint fails to contain any well-pleaded factual allegations that he was terminated by the City due to his protected activity.

After disregarding unsupported conclusory statements about the City's allegedly retaliatory motives (e.g. "false allegations of impropriety were used as a way to silence Eder and allow the illegal contract"), Mr. Eder's complaint does not plausibly plead, with well-pleaded factual allegations, that Mr. Eder was retaliated against for his protected activity. Doc. No. 37 at 30, ¶¶88-89.

While Mr. Eder does not offer any direct factual allegations to support his retaliation claim, he does allege that his suspension and termination occurred within days

17

of his alleged protected activity. *Id*. Temporal proximity may be used by a plaintiff to establish a prima facie case for causation in a retaliation complaint. However, temporal proximity is considered within the entire context of the facts alleges by a well pleaded complaint. Here, careful review of Mr. Eder's well-pleaded factual allegations shows that Mr. Eder plausibly alleges he was unlawfully terminated as the result of his deputy making a retaliatory complaint, which led to the City's investigation of Mr. Eder, after which, he allegedly the City terminated him as a result of religious discrimination. Doc. No. 37 at 14,16-31, ¶¶38-87,90-93. In contrast to the well-pleaded factual allegation by Mr. Eder that his termination resulted from retaliatory actions by his deputy and discrimination the City, after disregarding conclusory statements, Mr. Eder's complaint contains no well-plead factual allegations that his suspension, investigation, or termination was due to, or even, in any way related to, his allegedly protected activity.

In the absence of any well-plead factual allegations showing that his termination was related to his alleged protected activity, in the context of Mr. Eder's well-plead factual allegations that his termination was resulted from these other reasons, the Court finds Mr. Eder's pleading that his termination shortly followed the alleged protected activity is not sufficient to plausibly plead that his termination was due to his protected activity. Since Mr. Eder's complaint fails to plausibly plead this required element of his prima facie case, the Court finds that Mr. Eder has failed to state a claim that he is entitled to relief under the FCA, and the Court must grant this Motion to Dismiss.

## V. CONCLUSION

For the reasons above, the Court finds that Mr. Eder's Second Amended Complaint has failed to state a claim for which he is entitled to relief under the retaliation provisions of the False Claims Act. Accordingly, the City's Third Motion to Dismiss is GRANTED, and Mr. Eder's cause of action under the False Claims Act is DISMISSED. The Court notes that it previously dismissed Mr. Eder's retaliation claim on the City's Second Motion to Dismiss, and in so doing, gave Mr. Eder leave to amend his complaint one more time to present his best claim for relief, should in good faith, have reason to do so. With Mr. Eder now having presented his best case, the Court DISMISSES Mr. Eder's retaliation claim under the False Claims Act with prejudice. Nothing in this Memorandum Opinion and Order shall affect Mr. Eder's claim for religious discrimination under Title VII of the Civil Rights Act of 1964, or any other Motion which may be pending at this time.

**SO ORDERED.**

Signed November 13th, 2024.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE